IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ALEX F. SIMON,** | : |
| **Plaintiff,** | : Case No. 2:16-cv-259 |
| | : **JUDGE ALGENON L. MARBLEY** |
| v. | : |
| | : Magistrate Judge Jolson |
| **COMMISIONER OF SOCIAL SECURITY,** | : |
| **Defendant.** | : |

## OPINION & ORDER

This matter comes before the Court for consideration of Plaintiff Alex F. Simon's ("Simon") Objections to Magistrate Judge Jolson's March 16, 2017 **Report and Recommendation** (Doc. 16), which recommends that this Court overrule Simon's Statement of Specific Errors (Doc. 13) and affirm the Defendant Commissioner of Social Security's ("Commissioner") decision. Upon independent review by this Court, and for the reasons set forth below, Simon's Objections are hereby **OVERRULED**. The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's **Report and Recommendation**.

## I. BACKGROUND

Simon applied for disability insurance benefits ("DIB") in April 2012 and for supplemental security income ("SSI") in July 2012. He alleged that he became disabled on July 15, 2009. After initial administrative denials of his application, an Administrative Law Judge ("ALJ") conducted a hearing on August 29, 2014. In September 2014, the ALJ issued a decision finding that Simon was not disabled within the meaning of the Social Security Act.

1

In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disability benefits claim. *See* 20 C.F.R. § 416.920(a)(4).[1] At step one, the ALJ determined that Simon had not engaged in substantially gainful activity since July 15, 2009, the alleged onset date.

At step two, the ALJ found that through the alleged onset date, Simon had the severe impairments described as coronary artery disease with status post five stent placements, diabetes mellitus, obstructive sleep apnea, obesity, bilateral carpal tunnel syndrome with status post right carpal tunnel release, major depressive disorder, and generalized anxiety disorder.

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are not disabled . . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled . . . .

20 C.F.R. § 416.920(a)(4).

At step three, the ALJ further found that these impairments, whether taken alone or in combination, did not meet or medically equal one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Simon had the residual functional capacity ("RFC") to perform light work with the occasional climbing of ladders/ropes/scaffolds, frequent climbing of stairs/ramps, frequent crawling, frequent work around hazards such as unprotected heights or dangerous machinery and frequent use of his upper extremities for handling, fingering, and feeling. Mentally, Simon can perform work that does not require a fast work pace, strict production quotas, or more than frequent contact with others. Relying on testimony from a vocation expert ("VE"), the ALJ found that with this RFC, Simon cannot perform his past relevant work as a quality production specialist/production supervisor.

Nevertheless, at step five, the ALJ found that jobs exist in significant numbers within the national economy such that Simon could obtain employment consistent with his age, education, work experience, and RFC.

The ALJ's assessment of Simon's medical impairments and his RFC was based primarily on medical evidence from the record and opinion evidence from the state-agency medical consultants, which forms the crux of this dispute. Upon evaluating all of the medical evidence, the ALJ weighed each of the treating and evaluating physicians' medical opinions.

Dr. Robert Thompson, an examining neurologist, examined Simon for the first time in April 2013. Dr. Thompson suggested that Simon would not be able to work as a commercial driver, perform any repetitive forceful work with his right hand, or do any work that required him to walk up and down steps repeatedly. The ALJ assigned this opinion little weight because

3

the ALJ reasoned that Dr. Thompson's opinion was based upon Simon's subjective complaints and inconsistent with the totality of the medical evidence of record.

The ALJ, however, assigned great, but not determinative, weight to the opinions of the state-agency reviewing physicians, because the assessments were consistent with the record as a whole. The ALJ notes that the state agency did not identify any limitations on Simon's upper extremities, as the carpal tunnel surgery was performed after reconsideration. The record shows no new evidence, however, to reduce the probative value of the state-agency conclusions, and SSR 96-6p provides that the assessments must be considered in determining the issue of disability. The ALJ, excepting the new evidence of Simon's carpal tunnel surgery, concluded that the state agent's assessments were consistent with the record as a whole and that Simon is still capable of performing light work.

The ALJ's assessment of Simon's mental impairments (and his RFC) were based on examining medical records and assessments from the state-agency reviewing psychologists. Upon evaluating all of the medical evidence, the ALJ weighed each of the treating and evaluating psychologists' medical opinions.

Consultative psychological examiner, Dr. John S. Reece, evaluated Simon in October 2012. Dr. Reece assessed Simon with major depressive disorder, an anxiety disorder, and a global assessment of functioning ("GAF") score of 60. Dr. Reece opined that Simon has no limitations in his ability to understand, remember, and carry out instructions or in his ability to maintain attention and concentration, but that there was "some" limitation in his ability to cope with stress in the workplace and interact with others. The ALJ assigned this opinion significant weight to the extent that it is consistent with the totality of the medical evidence of record. The

ALJ also assigned significant weight to the assessments of the state agency reviewing psychologists because the assessments were supported by the available medical evidence.

The ALJ, however, assigned minimal weight to the opinion of Ms. Jennifer Wilson, CNP, because the few assessments Ms. Wilson did over a short period of time concluded inconsistent limitations with the reported mental status findings, as well as with the claimant's daily activities. It was noted that Ms. Wilson was not an acceptable medical source within the meaning of the regulation, as she is not a physician or psychologist. Nonetheless, the ALJ considered her opinion in accordance with the guidance provided in SSR 06-03p.

The Appeals Council denied Simon's request for review of the ALJ's determination on January 28, 2016, thus rendering the ALJ's benefits denial decision the Commissioner's final agency action. Simon then filed suit in federal court, alleging in his Statement of Errors that the ALJ's finding was incorrect because he erred in finding that Simon was capable of frequently using his hands and that the ALJ's decision to discredit Ms. Wilson's evaluation was in violation of SSR 06-3P.

On March 16, 2017, the Magistrate Judge recommended that this Court overrule Simon's Statement of Errors and affirm the Commissioner's denial of benefits. The Magistrate Judge noted that the ALJ evaluated Simon's medical record, personal life, and opinions from consultants to determine Simon's RFC, and concluded that the ALJ did not err when he assigned little weight to the opinion of Dr. Thompson, a non-treating source. The Magistrate concluded that substantial evidence supports the ALJ's RFC determination. The Magistrate also rejected Simon's argument that the ALJ erred in dismissing Ms. Wilson's examination report without articulating a proper reason. The Magistrate concluded on this issue that it was within the ALJ's discretion to assign minimal weight to Ms. Wilson's opinion, and the ALJ's ultimate conclusion

5

regarding Simon's mental abilities was articulated and supported in the record. Simon timely objected.

## II. STANDARD OF REVIEW

Upon objection to a Magistrate Judge's Report and Recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). This de novo review, in turn, requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988)).

## III. ANALYSIS

Simon objects to the Magistrate Judge's Report and Recommendation on two grounds. First, Simon argues the ALJ failed reasonably to account for Dr. Thompson's opinion, resulting in an arbitrary RFC determination not supported by substantial evidence. Second, Simon argues that the ALJ violated SSR 06-3P. Simon requests that the Court reverse the Commissioner's denial of his benefits claim because of these alleged errors.

### A. Substantial Evidence Supports the ALJ's RFC Determination.

Simon objects to the Magistrate Judge's finding that the ALJ did not err in assigning minimal weight to the opinion of Dr. Thompson. Furthermore, Simon believes that without Dr. Thompson's opinion, the RFC determination that Simon "can frequently use his upper extremities for handling, fingering, and feeling" was never properly considered. Reviewing the record in its entirety, this Court agrees with the Magistrate.

Recall that the Magistrate found the ALJ's RFC determination to be supported by substantial evidence in the record and, thus, not a ground for reversal. (Doc. 16, PageID 777). The Magistrate noted the ALJ's statement that Simon "can frequently use his upper extremities for handling, fingering, and feeling," is correct when read in context. (Admin. R., Doc. 11, PageID 75-76). Just after making this conclusion, the ALJ properly set forth the acceptable forms of evidence that may be used to establish a medical impairment:

> In making this finding, I have considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p...I have considered all symptoms and the extent to which these symptoms can reasonable be accepted as consistent with the objective medical evidence and other evidence...The pivotal question is whether those symptoms occur with such frequency, duration or severity as to reduce the claimant's RFC set forth above or to preclude all work activity on a continuing and regular basis...[t]he factors set forth in 20 CFR 404.1529(c) and 416.929(c) support the residual functional capacity that has been found. (*Id.* at PageID 76).

The ALJ relied on the objective evidence to determine that the record fails to present any impairment or combination or impairments that reasonably could be expected to result in pain or other symptoms of such severity or frequency as to preclude the range of work described. *Id.* Relevant to Simon's ability to use his upper extremities, the ALJ considered the following: Simon's history of hand tremors, carpal tunnel release surgery, opinions from state agency consultants, and Dr. Thompson's examination. (*Id.*, PageID 77, 79).

7

As to the medical evidence from the record, including observations from treating and reviewing sources, the ALJ was entitled to deny Dr. Thompson's opinion substantial weight because he fairly determined that it was based upon Simon's subjective complaints and not supported by the record as a whole. (Doc. 11, PageID 79). Consistency is a factor that must be evaluated when determining how much weight to give *any* medical opinion. 20 C.F.R. § 416.927(c)(4); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). As the regulation states, "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(c)(4).

This Court agrees that the ALJ provided a thorough treatment of the evidence and appropriately balanced Dr. Thompson's opinion against the rest of the record. Dr. Thompson opined that Simon's sleep apnea, carpal tunnel syndrome, and heart history prevent him from engaging in certain gainful employment. But this opinion (which more accurately states Simon's subjective complaints) stands in contrast to other evidence from the record, including Dr. Thompson's own treatment notes, which reflect that Simon was alert and oriented, with normal gait and station, and no motor weakness, sensory loss, or reflex changes. (Doc. 11, Tr. 429). Additionally, Dr. Thompson reported Simon was able to do yard work, cleaning, cooking, shopping, driving, and laundry. (*Id.*, Tr. 428). An ALJ correctly discounts an opinion of a physician that is not supported by his treatment notes. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); 20 C.F.R. § 404.157(c)(20 and (3) (identifying "supportability" and "consistency" as relevant considerations).

Simon also argues that the only medical source who considered the impact of his carpal tunnel syndrome in the workplace was Dr. Thompson. Based on credible record evidence, however, the ALJ considered the impact of Simon's carpal tunnel syndrome on his ability to

8

perform work-related tasks. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013); *see also* C.F.R. § 404.1545; SSR 96-8p. An RFC assessment describes the most a claimant can do after considering the effects of all impairments on his ability to perform work-related tasks. *See* 20 C.F.R. § 404.1545. The ALJ noted Simon's ability to do housework, such as cleaning, mopping, and sweeping; play games on the computer; drive; and engage in hobbies such as hunting, fishing, coin collecting and metal detecting. All of these activities require some degree of manipulative ability. (Doc. 11, Tr. 24-26, 250-52, 428).

Simon wants this Court to question the weight given to the state-agency opinions believing the opinions did not address whether or not carpal tunnel syndrome was a severe impairment. The ALJ, however, must consider the state agency assessments. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); SSR 96-6p ("A state agency assessment must be considered."). The ALJ acknowledged that those opinions were rendered before Simon's carpal tunnel surgery; however, the ALJ also accepted the new evidence of Simon's hand limitation. (Doc 11, PageID 79). Despite the new evidence of a hand limitation, the ALJ still found the agency's assessments consistent with the record as a whole. *Id.* This Court agrees with the Magistrate Judge that this was within the ALJ's discretion to value the state agency opinions in this way. *See Reeves*, 618 F. App'x at 275.

This Court rejects Simon's claim that the state-agency opinions did not provide substantial evidence because the ALJ considered the entire record to determine Simon's upper limitations. The "RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). The ALJ's duty is to formulate Simon's RFC based on all the relevant credible evidence of record, medical and otherwise. *See Justice*, 515 F. App'x at 587;

*see also* 20 C.F.R. § 404.1545; SSR 96-8p. Simon underwent carpal tunnel release surgery. Post-operatively, there is no medical objective medical evidence demonstrating complications with his ability to use his hands. (Doc. 11, PageID 79). Furthermore, a year-and-a-half after carpal tunnel release surgery, the medical record shows that when Simon was incarcerated, a neurological evaluation was performed, showing only a mild head tremor and bilateral upper extremity action/terminal tremor with persevered sensory modalities and normal muscle strength. (*Id.* at PageID 77). Considering the record as a whole, substantial evidence supports the ALJ's RFC determination regarding the use of Simon's hands in relation to his upper extremities.

### B. The ALJ Did Not Violate SSR 06-3P.

Simon objects to the Magistrate Judge's recommendation regarding the ALJ's treatment of Ms. Wilson's opinion on the grounds that the ALJ did not violate Social Security Ruling (SSR) 06-3p. (Doc. 17, PageID 784). After complete review, this Court agrees with the Magistrate and finds substantial evidence in the record to support the limited weight the ALJ accorded to Ms. Wilson's opinion.

Ms. Wilson, Simon's counselor, reported that Simon had extreme limitations in social interaction, concentration and persistence, and adaptation. (Doc. 11, Tr. 458-60). Ms. Wilson opined that due to depression and anxiety, Simon would not be able to maintain any type of employment. (*Id.*, Tr. 460). Under 20 C.F.R. § 1513(a), a nurse practitioner is not an acceptable medical source. Pursuant to SSR 06-03p, however, the opinions of non-acceptable medical sources must be weighed and evaluated in accordance with the criteria set forth in 20 C.F.R. § 404.1527, as further amplified in SSR 96-2p and 96-5p.

Simon argues that the ALJ automatically discounted Ms. Wilson's essential opinion. (Doc. 17, PageID 785). However, the Magistrate pointed out where the ALJ weighed several

factors set out in SSR 06-03p. (Doc. 16, PageID 778). The factors considered include: the length of relationship with the claimant, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area or expertise related to the individual's opinion, and any other factor that tends to support or refute the opinion. *See Dunmore v. Colvin*, 940 F. Supp. 2d 677, 685 (S.D. Ohio 2013).

The ALJ expressly considered the length of the counseling relationship and concluded that the few times Simon saw Ms. Wilson over a period of nine months was not sufficient to warrant any significant weight. (Doc. 11, PageID 80). Further, the extent of Ms. Wilson's reported limitations were significantly inconsistent with the reported mental findings from Dr. Reece, as well as with Simon's daily activities noted elsewhere. *Id.* It is clear the ALJ properly considered the SSR 06-3p factor analysis and, accordingly, this Court affirms that it was within the ALJ's discretion to assign minimal weight to Ms. Wilson's opinion as a result. *See* 20 C.F.R. § 404.1527(c)(2); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506-07 (6th Cir. 2006).

This Court also finds the weight accorded to Ms. Wilson's opinion to be supported by substantial evidence, and the ALJ's consideration of her opinion to be compliant with Social Security regulations. As noted by the ALJ, Ms. Wilson opined that Simon had extreme limitations, and due to depression and anxiety would not be able to maintain any type of employment. (Doc. 11, Tr. 458-60). This is inconsistent, however, with other medical opinions in the record. Dr. Reece opined that Simon has no limitation in his ability to understand, remember, and carry out instructions, or in his ability to maintain attention and concentration. But Dr. Reece found that there was "some" limitation in his ability to cope with stress in the workplace and

interact with others. (Doc. 16, Tr. 420-21). Subsequently, Dr. Reece assessed no impairment in intellectual functioning. *Id.*

Furthermore, Ms. Wilson's revised report, completed three months after the above opinion, noted that Simon was stable, and his symptoms were exclusively psychiatric. (*Id.*, Tr. 476-78). This assessment indicates only moderate symptoms and a moderate functioning impairment. Additionally, the report noted Simon had a normal gait, appearance, and speech; appropriate mood; and a clear, linear thought process (*Id.*, Tr. 476, 480).

Ms. Wilson's opinion is also inconsistent with Simon's reported daily activities. For instance, a functional report done in April 2013 stated that Simon was independent with dressing, grooming, feeding, and bathing, and able to do yard work as well as other tasks, such as cleaning, cooking, shopping, laundry, and driving. (Doc. 11, PageID 78).

Simon argues that because no other medical source has a longer history with Simon, except Ms. Wilson, her opinion should have been entitled more weight. (Doc. 17, PageID 784). This Court finds, however, that the opinion is not entitled to any special weight under the facts and circumstances of this case. The opinion that Simon's psychological symptoms were of a level of extreme severity is inconsistent with the treatment records, as well as Ms. Wilson's own revised report. Furthermore, the ALJ's analysis of the total record, including the opinions from acceptable medical sources, is sufficient to evaluate properly Simon's complete mental history. *See Dunmore*, 940 F.Supp. 2d at 686.

Simon is correct in that, after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source." Soc. Sec. Ruling 06-3p. Nevertheless, this Court agrees that the ALJ properly assigned Ms. Wilson's opinion little weight because the opinion is

both internally inconsistent and inconsistent with the overall evidence of record. *Dunmore*, 940 F.Supp. 2d at 687.

Based on the discussion above, the ALJ made no error in rejecting an opinion that is contrary to objective medical evidence, or in finding it to be unsupported by the record. *Id.* Given the contrary evidence of record, the ALJ acted within the permissible "zone of choice" in weighing Ms. Wilson's opinion. *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

Therefore, the ALJ fairly weighed the evidence as a whole, crediting that which was consistent with the record and discrediting that which stood as an outlier. Accordingly, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **AFFIRMS** the Commissioner's decision.

## IV. CONCLUSION

For these reasons, the Court **ACCEPTS** and **AFFIRMS** Magistrate Judge Jolson's **Report and Recommendation** (Doc. 16), thereby **OVERRULING** Simon's objections (Doc. 17). The Commissioner's denial of benefits is **AFFIRMED**. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                             s/Algenon L. Marbley
                                             **ALGENON L. MARBLEY**
                                             **UNITED STATES DISTRICT JUDGE**

**Dated: July 25, 2017**